## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH SEARS, | ) | |
| | ) | |
| Debtor | ) | Case No. 07-43412 |
| | ) | |
| ELIZABETH SEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-3045 |
| | ) | |
| EDUCAP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This adversary proceeding to discharge a student loan is slightly unusual in that the Debtor-Plaintiff does not allege that the debt she owes to the Defendant, EduCap, Inc., should be discharged under 11 U.S.C. § 523(a)(8) because repaying it would impose an undue hardship on her. Rather, in an apparent preemptive strike, the Debtor seeks a determination that the debt she owes to EduCap, Inc., is not an educational loan covered by § 523(a)(8) at all. EduCap seeks summary judgment, asserting that the uncontroverted facts establish that its loan qualifies as an educational loan under § 523(a)(8)(A) and is therefore nondischargeable in the absence of an allegation of undue hardship. The Court agrees.

### STANDARD OF REVIEW

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[1]

---

[1] Fed. R. Civ. P. 56(c), made applicable in bankruptcy cases by Fed. R. Bankr. P. 7056; *Williams v. Marlar* (*In re Marlar*), 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997)).

## BACKGROUND

Despite the Plaintiff's failure to provide a statement of uncontroverted facts in compliance with Local Rules 9013-1.H (1) and (2),[2] the Court will address the motion for summary judgment on the merits, inasmuch as the facts can be determined without great difficulty from the pleadings and exhibits offered in support of the motion, and the Debtor has not been disadvantaged by the Plaintiff's failure to strictly follow the rules.

On or about September 26, 2006, the Debtor executed a "Combined Private Consolidation Loan Application and Promissory Note" for a "Loan to Learn Consolidation Loan" in the amount of $122,000.[3] The Note identifies the Debtor as the "Student Borrower" and HSBC Bank USA, National Association ("HSBC"), as the lender. HSBC is a for-profit entity.

The Loan to Learn Program under which the loan to the Debtor was made is administered by EduCap, Inc. ("EduCap") pursuant to a "Student Loan Origination, Sale and Participation Agreement" ("Agreement") between EduCap and HSBC dated January 27, 2006. EduCap, originally incorporated as "University Support Services, Inc.," is a nonprofit corporation, created for the purpose of administering educational loan programs.[4]

Under the terms of the Agreement, EduCap was required to do essentially everything

---

[2] Local Rules 9013-1.H(1) and (2) state:
1. The suggestions in support of a motion for summary judgment shall begin with a concise statement of uncontroverted material facts. Each fact shall be set forth in a separately numbered paragraph. Each fact shall be supported by reference to the place in the record where the fact is established.
2. Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.

[3] The loan consolidated the following six loans: $59,576 owed to Loan to Learn; $18,027 to GoalF; $6,900 to CFS; $5,006.83 to AES; $15,322 to SM Servicing; and $14,360.17 to National City Bank.

[4] University Support Services, Inc. changed its name a number of times – from EduCap, Inc., to LuckyStar Foundation, Inc., to Educational Finance Resources Corporation, and then back to EduCap, Inc. – but it retained its nonprofit status through all of its name changes.

relating to making Loan to Learn loans, except initially funding them.  EduCap prepared the form of loan documents, marketed the loans, processed the loan applications, approved or denied the loan applications, requested disbursements from HSBC on approved loans, and created the loan files after disbursement.  EduCap was also responsible for handling all customer inquiries and servicing the loans made under the Loan to Learn Program.  Finally, EduCap was obligated to purchase all loans funded by HSBC, regardless of whether a loan was current or in default.  Consistent with this requirement, EduCap purchased the Debtor's loan from HSBC on December 4, 2006, along with numerous others.

Although the Agreement between EduCap and HSBC does not specifically state that EduCap funds the Loan to Learn Program, EduCap's funding of the program is presumed from its obligations under the Agreement to administer it and to repurchase the loans initially funded by HSBC.

## DISCUSSION

The Debtor's complaint initiating this adversary proceeding rests solely on the contention that EduCap's loan fails to qualify for exception from the discharge under § 523(a)(8)(B) – the subsection of § 523(a)(8) that deals with loans made by private (*i.e.*, non-governmental) lenders.  Apparently, the Debtor believes that because the loan was originally funded by a for-profit lender, HSBC, it is automatically removed from the penumbra of § 523(a)(8)(A).  But § 523(a)(8)(A) covers more than just governmentally funded loans; it covers loans "made under a program funded in whole or in part by a governmental unit or nonprofit institution."[5]

Because the Court finds that EduCap's loan is covered by § 523(a)(8)(A), the Court need not address the merits of the Debtor's argument that the loan is not covered by § 523(a)(8)(B).  However, the Court does note that the Debtor's contention that the loan in question was not obtained for an educational purpose is wholly without merit in light of her acknowledgment in the Note that "[t]he proceeds of the Loan made as a result of my application will be used only for educational purposes" and that "I (Elizabeth Sears) represent and agree that the loans

---

[5] *See Hemar Service Corp. of America, Inc. v Pilcher* (*In re Pilcher*), 149 B.R. 595, 598 (B.A.P. 9th Cir. 1993) (emphasizing distinction between the funding of a loan and §523(a)(8)(B)'s requirement that the loan merely be made under a program funded by a nonprofit institution).

consolidated under this Note have been used solely for tuition and other reasonable education expenses, including but not limited to room and board, fees, books, personal computer, supplies and equipment, laboratory expenses, transportation and commuting costs, and other education-related personal expenses of the Student. . . ."  The Debtor is bound by these acknowledgments and her attempt to disown them in this adversary proceeding is not well taken.

Returning to § 523(a)(8)(A), the Bankruptcy Code does not provide any guidance as to what it means for a loan to be made "under a program," or what constitutes the "funding" of that program by a nonprofit institution.  Courts wrestling with the definition of these terms have reached varying results.  One court has found that the guarantee of a private loan by a nonprofit institution qualifies the loan as one made under a program funded by a nonprofit institution,[6] while another has found that the mere guaranty of a loan is insufficient and that the nonprofit must have an obligation to repurchase the loan regardless of default.[7]  Other courts have placed more emphasis (correctly so, in this Court's opinion) on the nonprofit institution's degree of involvement in the administrative functions of the program under which a loan is funded.[8]  If Congress had intended § 523(a)(8)(A) to require a nonprofit institution's actual funding of a loan – indirectly through its repurchase or by way of a guaranty – it could have simply said so; instead, it opted for the broader reference to loans made under programs funded by nonprofit institutions.

In this case, the Court does not need to put a fine point on the directness of the funding or the degree of involvement required of a nonprofit institution to determine whether a loan qualifies as one "made under a program funded . . . by a nonprofit institution" because EduCap's obligation to repurchase the loans and its near-plenary control of the Loan to Learn Program, under which the loan to the Debtor was made, satisfies even the strictest interpretation of § 523(a)(8)(A).

---

[6] *See In re O'Brien*, 419 F.3d 104 (2nd Cir. 2005).

[7] *See In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D. Cal. 1989).

[8] *See In re Pilcher*, 149 B.R. at 599-600; *In re Taratuska*, 374 B.R. 24 (Bankr. D. Mass. 2007) (finding that loan was not made under a program funded by a nonprofit institution where the for-profit lender retained most of the administrative functions for the loan).

## **CONCLUSION**

For the reasons stated above, the Court finds that the debt owed by the Debtor to EduCap, Inc., is an educational loan made under a program funded by a nonprofit institution subject to exception from the Debtor's discharge under 11 U.S.C. § 523(a)(8)(A). The Debtor has not alleged or offered any facts to establish that repayment of this loan will impose an undue hardship on the Debtor. Therefore, EduCap is entitled to summary judgment in this adversary proceeding, including a determination that the loan is nondischargeable.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 14th day of July 2008.

/s/   Jerry W. Venters
United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Kevin Checkett
Wendi Alper-Pressman